Diane W. BENTLEY, Plaintiff–Appellant,

v.

**GREAT LAKES COLLECTION BUREAU, Defendant– Appellee.**

No. 1670, Docket 93–7153.

United States Court of Appeals, Second Circuit.

Argued June 14, 1993.

Decided Sept. 15, 1993.

 

Inc. ("CRSI") to provide debt collection services. The contract entered into by CRSI and Great Lakes provided that Great Lakes "must have CRSI's prior written authorization to bring legal action to affect [sic] collection of any Referred Account." The service contract further provided that Great Lakes "shall at no time state or imply in any communication to a Referred Account that CRSI will sue the debtor without [prior] written authorization" from CRSI. This action arises out of two attempts by Great Lakes to collect an outstanding debt of $483.43 owed to CRSI by Bentley.

Great Lakes sent Bentley two computer-generated collection letters ("dunning letters") dated November 30, 1990 and December 18, 1990. The November 30 dunning letter included the following language:

> YOUR CREDITOR IS NOW TAKING THE NECESSARY STEPS TO RECOVER THE OUTSTANDING AMOUNT OF $483.43. THEY HAVE INSTRUCTED US TO PROCEED WITH WHATEVER LEGAL MEANS IS NECESSARY TO ENFORCE COLLECTION.
>
> ENCLOSE YOUR PAYMENT IN THE ENVELOPE PROVIDED AND MAKE YOUR CHECK OR MONEY ORDER PAYABLE TO GREAT LAKES BUREAU, INC.
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Great Lakes' computer is programmed to generate this form of letter whenever the agency receives a new account.

The December 18 letter, a follow-up form letter, stated in relevant part:

> THIS OFFICE HAS BEEN UNABLE TO CONTACT YOU BY TELEPHONE, THEREFORE YOUR DELINQUENT ACCOUNT HAS BEEN REFERRED TO MY DESK WHERE A DECISION MUST BE MADE AS TO WHAT DIRECTION MUST BE TAKEN TO ENFORCE COLLECTION.
>
> WERE OUR CLIENT TO RETAIN LEGAL COUNSEL IN YOUR AREA, AND IT WAS DETERMINED THAT SUIT

Joanne S. Faulkner, New Haven, CT, for plaintiff-appellant.

Robert W. Allen, New Haven, CT (Tyler Cooper & Alcorn, of counsel), for defendant-appellee.

Before: KEARSE, PRATT and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Diane Bentley appeals from a summary judgment entered in the United States District Court for the District of Connecticut (Covello, *J.*) dismissing her complaint in an action brought against defendant-appellee Great Lakes Collection Bureau, Inc. ("Great Lakes"). In the complaint, Bentley alleged that two collection letters sent to her by Great Lakes violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692*o* (1988 & Supp.1993) (the "FDCPA"). The district court found that Great Lakes did not violate the FDCPA even though some of the statements contained in the letters were not entirely accurate. For the reasons that follow, we reverse.

## BACKGROUND

Great Lakes is a debt collection agency that was retained by Citicorp Retail Services,

SHOULD BE FILED AGAINST YOU, IT COULD RESULT IN A JUDGMENT. SUCH JUDGMENT MIGHT, DEPENDING UPON THE LAW IN YOUR STATE, INCLUDE NOT ONLY THE AMOUNT OF YOUR INDEBTEDNESS, BUT THE AMOUNT OF ANY STATUTORY COSTS, LEGAL INTEREST, AND WHERE APPLICABLE, REASONABLE ATTORNEY'S FEES.

AGAIN, DEPENDING UPON THE LAW IN YOUR STATE, IF SUCH JUDGMENT WERE NOT THEREUPON SATISFIED, IT MIGHT BE COLLECTED BY ATTACHMENT OF AN EXECUTION UPON YOUR REAL AND PERSONAL PROPERTY. GARNISHMENT MAY ALSO BE AN AVAILABLE REMEDY TO SATISFY AN UNSATISFIED JUDGMENT, IF APPLICABLE IN THE STATE IN WHICH YOU RESIDE.

WE THEREFORE SUGGEST YOU CALL OUR OFFICE IMMEDIATELY TOLL FREE AT 1–800–874–7080 TO DISCUSS PAYMENT ARRANGEMENTS OR MAIL PAYMENT IN FULL IN THE ENCLOSED ENVELOPE.

NO LEGAL ACTION HAS BEEN OR IS NOW BEING TAKEN AGAINST YOU.

In fact, CRSI had not authorized Great Lakes "to proceed with whatever legal means is necessary to enforce collection" as represented in the first letter; and Great Lakes had made no effort to telephone Bentley prior to December 18, had not referred her account to anyone's desk and was not about to make any decisions regarding her account as represented in the second letter. According to information disclosed during discovery, Great Lakes: does not make the decision whether to initiate legal proceedings in matters involving CRSI; never recommends legal proceedings unless its advice is solicited from its clients; does not employ attorneys admitted to practice in the state of Connecticut; has no procedure by which to refer accounts to attorneys in Connecticut or in other states to commence litigation; and is not informed when any of its clients ultimately sues a debtor. Moreover, even in cases where its advice is solicited, Great Lakes recommends legal proceedings to its clients only for approximately one percent of the collection accounts referred to it.

## DISCUSSION

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (1988). We apply an objective test based on the understanding of the "least sophisticated consumer" in determining whether a collection letter violates section 1692e. *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). The sixteen subsections of section 1692e provide a nonexhaustive list of practices that fall within the statute's ban. These practices include "[t]he threat to take any action that cannot legally be taken or that is not *intended to be taken.*" 15 U.S.C. § 1692e(5) (emphasis added). A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, *Clomon,* 988 F.2d at 1318, and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA, *see* 15 U.S.C. § 1692k.

Here, the two dunning letters contained several admittedly false statements. First, the November 30 dunning letter falsely stated that CRSI had given Great Lakes the authority to initiate legal proceedings against Bentley. It implied that the commencement of legal proceedings was imminent when, in fact, this was not the case. The district court concluded that these statements "were not misleading or deceptive within the meaning of [the FDCPA]," because "accepting the plaintiff's [arguments] would cast serious question on what, if anything, a creditor could say in its attempt to collect a lawful debt." But, although the court felt that the language was not violative of the statute, the FDCPA specifically prohibits the threat to take any action "that is not intended to be taken," *see id.* § 1692e(5), and the "least sophisticated consumer" would interpret this language to mean that legal action was authorized, likely and imminent. Therefore, these statements are "false, deceptive, [and] misleading" within the meaning of the FDCPA. *See Trans World Accounts, Inc. v. FTC,* 594 F.2d 212, 216 (9th Cir.1979).

Second, the December 18 dunning letter falsely stated that Great Lakes had

attempted to contact Bentley prior to December 18 and that Bentley's account had been referred to someone's desk, where a decision would be made regarding her account. The reference to the status of Bentley's account is deceptive, implying "personal attention" to her account, when, in fact, no such "desk" existed. The letter therefore violates the FDCPA's strict prohibition against deceptive practices. The district court found that these inaccuracies in the December 18 letter were non-actionable violations of the FDCPA. We disagree. The FDCPA is a strict liability statute, *see Clomon,* 988 F.2d at 1320, and the degree of a defendant's culpability may only be considered in computing damages, *see* 15 U.S.C. § 1692k(b).

Moreover, the later letter's references to the various proceedings supplementary to judgment available to enforce collection (e.g., garnishment) also violated section 1692e(5)'s prohibition of threats to take action "that [are] not intended to be taken." *See id.* § 1692e(5). These references to legal remedies, when read in conjunction with the first paragraph of that letter, which advised that the account was being reviewed by Great Lakes to determine "what direction must be taken to enforce collection," would mislead the least sophisticated consumer. The quoted language conveys to the consumer that Great Lakes was authorized to make the decision to institute the legal action that could lead to the supplementary proceedings described. In the context of the letter, the threat of a lawsuit instigated by Great Lakes is strengthened by the statement: "No legal action *has been* or *is now being* taken against you." (emphasis added). In fact, CRSI retained the authority to decide whether legal proceedings of any kind would be instituted, and the likelihood of such proceedings on a claim for $483.43 was almost nonexistent.

## CONCLUSION

The judgment of the district court is reversed and the case remanded for further proceedings consistent with the foregoing.