**Frank SAVINO, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**COMPUTER CREDIT, INC., Defendant.**

**No. CV 95–4446 (ADS).**

United States District Court, E.D. New York.

April 11, 1997.

---

Law Offices Of Scott Gelfand, New York City, for Plaintiff.

Robert Dougherty, Garden City, NY, for Defendant.

SPATT, District Judge:

This action arises from the claims of the plaintiff, Frank Savino ("Savino" or the "plaintiff"), on behalf of a putative class, that the defendant, Computer Credit, Inc. ("CCI" or the "defendant"), has acted in violation of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692, et seq., in its capacity as a collection agency, by mailing the plaintiff a letter which contains language contrary to the statute's re-

quirements. Presently before the Court are three applications: (1) the defendant's objections to the February 21, 1997 order of United States Magistrate Judge Arlene R. Lindsay granting the plaintiff's motion for leave to file a second amended complaint; (2) the defendant's motion for summary judgment and related costs and attorney's fees; and (3) the plaintiff's cross motion for partial summary judgment as to liability or in the alternative for a stay of the defendant's motion for summary judgment pending completion of discovery.

## I. Background

The plaintiff is a resident of Hauppauge, New York. The defendant is a debt collection agency with its principal place of business in Winston–Salem, North Carolina. According to the original complaint, dated October 22, 1995, the plaintiff received a letter from the defendant dated August 28, 1995, the purpose of which was to collect an alleged debt of $153.00 owed to North Shore Hospital. In this pleading Savino alleged that this August 28, 1995 letter was the *"first* and only letter" that he received with respect to the alleged debt. Compl. ¶ 8. The complaint continued by alleging that this letter failed to advise the plaintiff of "his right to validate and dispute the alleged debt" within 30 days and that CCI applied "false, deceptive and misleading means in connection with the collection" of the alleged debt, all in violation of the FDCPA. Compl. ¶¶ 9, 10. In addition, Savino alleges that he is acting on behalf of a class of similarly situated consumers whose rights have been violated.

By notice of motion dated August 12, 1996, the plaintiff moved for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a). According to the moving papers, after this action was commenced, plaintiff's counsel was advised that his client had been sent a prior letter by CCI with regard to the aforementioned debt which letter was dated August 14, 1995. Based on this representation, and the recently issued decision from the Second Circuit, *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2d Cir.1996), the plaintiff decided that it would be appropriate to file an amended complaint. Initially the plaintiff attempt-

ed to obtain the defendant's consent to file the amended pleading. CCI refused. Accordingly, the plaintiff filed the appropriate motion pursuant to Fed.R.Civ.P. 15(a).

The only substantive difference between the original and proposed amended complaints was that in addition to asserting that the August 28, 1995 letter was the first correspondence sent, Savino alleged in the alternative that, "[u]pon information and belief, CCI mailed an earlier letter to Savino, dated August 14, 1995, which was the first communication by CCI to Savino, or at least, CCI's first letter to Savino." Am. Compl. ¶ 10. The proposed amended complaint continued by alleging that while this letter did contain the required 30 day debt validation notice, it nevertheless violated the FDCPA "by containing language that overshadows, contradicts or is otherwise inconsistent with Savino's right to a 30 day statutory period in which to validate and [sic] dispute the alleged debt...." Am. Compl. ¶ 11.

By order dated September 18, 1996, this Court referred the motion for leave to file an amended complaint to Magistrate Judge Lindsay to render a decision. A report and recommendation would be necessary only if the decision was dispositive as to any claim or issue in the action.

In a thoughtful memorandum order dated November 7, 1996, a decision with which the Court agrees, Judge Lindsay granted the plaintiff's motion and the proposed amended complaint was deemed filed. The defendant did not file any objections to this order. On November 13, 1996, at a conference before Judge Lindsay, the plaintiff discontinued his claim based on the August 28, 1995 letter.

On February 20, 1997 at his deposition, Savino admitted that he received the August 14, 1995 letter. The following day, the plaintiff moved for leave to file a second amended complaint deleting any initial denial that he never received the August 14, 1995 letter, alleging instead that he "received a letter from the Defendant dated August 14, 1995 for the purpose of collecting an alleged debt of $153.00 incurred by Savino with North Shore Hospital. This was the *first* letter Plaintiff Savino received from the Defendant with respect to the alleged debt." Sec. Am.

Compl. ¶ 7 (emphasis in original). The proposed second amended complaint does not contain any reference to the August 28, 1995 letter, instead alleging that the August 14, 1995 letter violated his rights pursuant to the FDCPA.

By order dated February 21, 1997, Judge Lindsay granted the plaintiff's motion for leave to file the second amended complaint. CCI filed its objections on March 7, 1997. On March 26, 1997, the defendant's motion and plaintiff's cross motion for partial summary judgment or in the alternative for a stay of the defendant's motion were filed.

II. *Objections to the February 21, 1997 order*

■ The defendant's objections to Judge Lindsay's order granting the plaintiff leave to file a second amended complaint are easily resolved. The plaintiff's motion for leave to amend seeks only to delete any allegations referring to the August 28, 1995 letter, thereby narrowing the issues for trial. While the Court appreciates the apparent disingenuous nature of the plaintiff initially denying that he ever received the August 14, 1995 letter and then subsequently reversing his position, the Court is inclined to agree with Judge Lindsay that once a plaintiff has been permitted to incorporate inconsistent facts in his pleadings pursuant to Fed.R.Civ.P. 8(e)(2), there is no precedent for the proposition that one of these alternatives may not be withdrawn. Accordingly, the Court adopts Judge Lindsay's February 21, 1997 orders regarding the plaintiff's motion for leave to file a second amended complaint as the decision of the Court.

■ However, the Court notes that a superseded pleading in a civil case may constitute an admission. In *United States v. GAF Corp.*, 928 F.2d 1253 (2d Cir.1991), it was held:

Most significantly, as support for the conclusion reached in [*United States v. McKeon*, 738 F.2d 26, 31 (2d Cir.1984),] this Court noted that the law is quite clear that superseded pleadings in civil cases may constitute admissions of party opponents, admissible in the case in which they

were originally filed, as well as any subsequent litigation involving that party. *Id.* (citations omitted). "A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.'" *Id.* This Court quoted extensively from Judge Swan:

> A pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal. .... When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extra-judicial admission made by a party or his agent.... If the agent made the admission without adequate information, that goes to its weight, not its admissibility.

*Id.* (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.,* 32 F.2d 195, 198 (2d Cir.), *cert. denied,* 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929)).

The rule that inconsistent prior pleadings should be made available for the jury's comparison was reaffirmed recently by this Court in *Andrews v. Metro–North [Metro North],* 882 F.2d 705 (2d Cir.1989). There, we wrote that a district court's refusal to permit jurors to be informed of an amendment to complaint, and to examine the original complain was "a substantial abuse of discretion." *Id.* at 707 (citing *McKeon,* 738 F.2d at 31; and *Dexter & Carpenter,* 32 F.2d at 198). This Court held that the district court's rulings were in error, and that the statements in the complaints constitute admissions. *Id.*

*GAF Corp.,* 928 F.2d at 1259–60.

In addition, the prior complaints may be used to impeach the credibility of the plaintiff.

### III. *The motion and cross motion for summary judgment*

#### A. *Summary judgment standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204,

209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd., Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### B. *The parties' motions*

■ Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors...." 15 U.S.C. § 1692(e); *Cavallaro v. Law Office of Shapiro & Kreisman,* 933 F.Supp. 1148, 1152 (E.D.N.Y.1996). The plaintiff brought this action based on an alleged violations of 15 U.S.C. § 1692g, which provides in relevant part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; [and]
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector....

*Id.*

The Act imposes strict liability unless the debt collector can demonstrate that its violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error, a defense not raised in this action. *See* 15 U.S.C. § 1692k(c); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33–34 (2d Cir.1996). A single violation of the Act is sufficient to impose liability. *Cavallaro,* 933 F.Supp. at 1153, citing, *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2d Cir.1993).

When applying section 1692g, the Court uses an objective standard, evaluating how the "least sophisticated consumer" would interpret any notice he received. *Russell,* 74 F.3d at 34, citing, *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993); *see Bentley,* 6 F.3d at 62. "The Act is aimed at protecting consumers in general from abusive debt collection practices and the test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell,* 74 F.3d at 34. Applying this standard, the Court must assess whether the notice "overshadowed or contradicted" the mandatory validation notice thereby making the consumer uncertain of his rights. *Id.* at 34–35, citing, *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991). It is not necessary to prove that the contradiction is "threatening." *Id.* at 35. Further, the language on the back of a collection letter which accurately depicts a consumer's rights under the Act will not validate the otherwise contradictory language contained on the front of the letter. *See id.* at 36.

The essence of Savino's claim is that the August 14, 1995 letter violates 15 U.S.C. § 1692g as interpreted by the Second Circuit in *Russell.* The letter states:

> This notice will serve to inform you that your overdue balance with North Shore Hospital has been referred to Computer Credit, Inc. *The hospital insists on immediate payment or a valid reason for your failure to make payment.* The law prohibits us from collecting any amount greater than the obligation stated above. Unless you notify us to the contrary, we will assume the amount due is correct. This communication is sent to you in an attempt to collect this debt. Any information obtained will be used for that purpose. To avoid further contact from us, pay the above debt or contact the hospital to make

arrangements for settlement. Payment should be sent directly to the hospital.

Affidavit of Robert Dougherty, Jan. 17, 1997, Exh. A (emphasis added).

The narrow issue before the Court is whether the language stating that the "hospital insists on immediate payment" violates the requirements of section 1692g which requires that a consumer be given 30 days to dispute the debt, which the parties agree, is set forth on the back of the letter.

In this regard, the Court finds the decision *Beeman v. Lacy, Katzen, Ryen & Mittleman,* 892 F.Supp. 405 (N.D.N.Y.1995) to be instructive. In *Beeman,* the defendant law firm sent a letter to a debtor stating in relevant part, "Please immediately send your remittance, in the above amount, payable to [the defendant], or communicate with us to explain your failure to do so." The letter continued by advising the plaintiffs of their rights under the FDCPA. Although *Beeman* was decided prior to *Russell,* Judge Pooler correctly predicted that the language at issue need only "contradict or overshadow" the plaintiffs' rights under section 1692g and rejected the reasoning of those courts finding to the contrary, requiring that the contradictory language be "threatening." *Id.* at 411, rejecting *Smith v. Financial Collection Agencies,* 770 F.Supp. 232 (D.Del.1991) among others). Applying this test, the district court held that even though this language is relatively mild when compared with other cases, it "[n]evertheless ... contradicts the validation notice.... Read by itself, the second paragraph [containing the relevant language] leaves the impression that if the Beemans wished to dispute the debt, they must act immediately." *Id.* at 412.

Similarly, in *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086, 1089, 1094 (W.D.N.Y.1992), the consumer was sent a debt collection letter stating:

> YOUR CREDITOR HAS REFERRED YOUR ACCOUNT TO OUR COLLECTION AGENCY FOR IMMEDIATE COLLECTION.
>
> THIS IS A DEMAND FOR PAYMENT IN FULL TODAY. TO AVOID FURTHER CONTACT, RETURN THE BOTTOM SECTION OF THIS NOTICE WITH YOUR FULL PAYMENT TODAY!

*Id.* at 1089. The court held that this language was "contradictory to the validation notice rights available to the consumer and a misleading statement as immediate payment is not the only step which may then be taken by Plaintiff to avoid further contact." *Id.* at 1094.

Support for this conclusion is also found in other circuits. In *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482 (4th Cir. 1991), the plaintiff received a collection letter stating in relevant part, "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT" and "YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO U.S. FOR IMMEDIATE ACTION. YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT. IF THERE IS A VALID REASON, PHONE US ... TODAY. IF NOT PAY US—NOW." *Id.* at 483. Evaluating this language, the Fourth Circuit held that

> [t]he emphasis on immediate action also stands in contradiction to the FDCPA, which provides consumers a thirty day period to decide to request validation. A consumer who received Payco's form could easily be confused between the commands to respond "immediately," "now," and "today," and the thirty day response time contemplated by the statute.

*Id.* at 484.

CCI's August 14, 1995 letter presents essentially the same problem. Section 1692g requires that a debt collection letter advise a debtor that she or he has 30 days to dispute the validity of the debt. The language contained on the back of the August 14, 1995 letter satisfies this requirement. The language on the front however, "contradicts" this statement, "insist[ing] on immediate payment." Accordingly, the Court finds that the August 14, 1995 letter violated section 1692g as a matter of law, *see Russell,* 74 F.3d at 35, and the plaintiff's motion for partial summary judgment as to liability is granted. *See Graziano,* 950 F.2d at 114 (granting plaintiff summary judgment on claim for violation of 15 U.S.C. § 1692g).

In reaching this conclusion, the Court notes several arguments made by the defendants. Initially CCI maintains that "cases dealing with the use of the words or phrases in collection letters which were found to overshadow or contradict the Debt Validation Notice, involve some form of threat to harm the debtor's credit rating or to take legal action within the 30 day dispute period." Def. Mem. of Law at 5.

In the Court's view, the defendant misinterprets the law. As CCI states its own papers, in Russell, the Second Circuit expressly stated that "[i]t is unnecessary to prove the contradiction is threatening" in order to find a violation. *Russell*, 74 F.3d at 35. To the extent that CCI relies on the district court decision, *Colmon v. Payco–General Am. Credits, Inc.*, 774 F.Supp. 691, 695 (D.Conn.1990) (finding no violation where there is no "threaten[ed] 'harm' if payment is not made"), the Court believes that *Colmon* is overruled by *Russell*. The fact that the notices at issue in *Russell* may have threatened some type of action does not alter this rule. Accordingly, the fact that CCI's August 14, 1995 letter does not threaten any specific reprisal does not vitiate the letter's demand for "immediate payment."

*Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir.1996) and *Higgins v. Capitol Credit Servs., Inc.*, 762 F.Supp. 1128 (D.Del. 1991), cited by CCI also do not alter the Court's conclusion. Savino seeks relief under 15 U.S.C. § 1692g. In *Wade*, the court addressed 15 U.S.C. § 1692e(5) which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" and 15 U.S.C. § 1692e(10), which forbids "the use of any false representation or deceptive means to collect or attempt to collect any debt." Based on the differences in the statutory provisions invoked, the Court finds the plaintiff's claims distinguishable from those in *Wade*. To the extent that *Higgins* shares similar facts to this case, the Court finds that it contradicts the teachings of *Russell, Beeman, Rabideau* and *Miller,* and as a result, the Court declines to follow it.

■ Finally, CCI argues that it is entitled to summary judgment because "Savino's claim for damages is completely illusory as Savino states he never received CCI's August 14, 1995 letter." Def. Mem. of Law at 13. At the heart of this argument is the same contention underlying the defendant's opposition to the plaintiff's prior Rule 15 motions. CCI contends that because Savino alleged in his amended complaint that he never received the August 14, 1995 letter, he should be barred from seeking damages based on any unlawful language contained in that letter. This argument has great appeal to the Court although it is contrary to the applicable law.

■ However, as the Court stated above when addressing the defendant's objections to Judge Lindsay's February 21, 1997 order, this contention represents merely the rehashing of those arguments already rejected by Judge Lindsay in her November 7, 1996 order, a decision to which CCI failed to object. Even when considering the merits of this argument, the Court finds the defendant's position unpersuasive. As the Second Circuit stated in *Russell,* section 1692g is a strict liability statute and its provisions do not require an actual injury to state a violation. Indeed, 15 U.S.C. § 1692k provides that a debt collection agency may be held liable for: "(1) any actual damage sustained" and (2) "such additional damages as the court may allow, but not exceeding $1000." While the Court appreciates the fact that Savino's inconsistent allegations contained in his various pleadings may be considered on the issue of damages, they do not nullify any prior violation.

In this regard, CCI's reliance on *Higgins, supra* is misplaced. In *Higgins,* the court granted summary judgment to the defendant with respect to claims based on letters which the plaintiff admitted that he did not remember receiving, and as to which he refused to amend his complaint to include such references. In this case, the plaintiff has amended his complaint to include references to the August 14, 1995 letter. As a result, *Higgins* is inapposite.

In reaching its conclusion the Court further notes that in their papers, the parties digress into arguments regarding the deposi-

tion testimony of the plaintiff, taking opposing views as to whether the he was "confused" by the request for immediate payment contained in the August 14, 1995 letter. Suffice it to say that in the Court's view, resolution of this issue will not affect the determination as to the defendant's liability.

■ Further, the Court notes that CCI also seeks sanctions pursuant to Fed.R.Civ.P. 11 in its reply papers in addition to the costs and attorney's fees sought in its notice of motion. Rule 11, which provides for the award of sanctions, was amended in 1993. Under the amended Rule 11, sanctions may be awarded for violations of subsection (b), which provides in relevant part,

> **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
> 
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> 
> (2) the claims, defenses, and other legal contentions therein are warranted under existing law or by nonfrivolous argument for the extension modification or reversal of existing law or the establishment of new law;
> 
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]
> 
> \*   \*   \*   \*   \*   \*

Fed.R.Civ.P. 11(b). Motions for sanctions under Rule 11 must "be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection (b)." Fed.R.Civ.P. 11(c)(1)(A); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995). A request for Rule 11 sanctions should not be included merely as an additional claim for relief, Fed. R.Civ.P. 11 (Advisory Committee Notes), and

an award of sanctions is discretionary and should be imposed with caution. *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994). The standard for sanctioning factual contentions under the current rule is whether there is, or will likely be, "evidentiary support" for the allegations. *Hadges,* 48 F.3d at 1328 (citing Advisory Committee note).

Initially, the Court reserved decision as to the defendant's Rule 11 motion. However, because CCI has violated the provisions of Rule 11 by filing this motion as part of its summary judgment motion, this application is denied. Nevertheless, the Court is concerned by this situation in which a party makes specific allegations in a pleading and then reverses his position without explanation. Accordingly, CCI's motion for sanctions is denied without prejudice and with leave to refile in compliance with the requirements of Rule 11.

In conclusion, the Court addresses the issue of outstanding discovery. Although the plaintiff purports to be acting on behalf of a class, a motion for class certification has not been perfected. According to the plaintiff's Memorandum of Law in support of his cross motion, he is still awaiting certain discovery, such as documents which will help prove numerosity, with regard to a certification motion.

If the plaintiff persists in pursuing this avenue, the Court notes that it must consider the propriety of certifying a class representative who brings a lawsuit denying receipt of a letter in one pleading and then reverses this representation for whatever reason this was done.

### IV.  *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's objections to the February 21, 1997 order of United States Magistrate Judge Arlene R. Lindsay are denied; it is further

ORDERED, that the defendant's motion for summary judgment pursuant to Fed. R.Civ. P. 56 is denied; it is further

ORDERED, that the defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied without prejudice and with leave to refile in accordance with Fed.R.Civ.P. 11; it is further

ORDERED, that the plaintiff's motion for partial summary judgment as to liability is granted; it is further

ORDERED, that the parties are directed to contact Judge Lindsay's chambers forthwith to conclude any remaining discovery on an expedited basis.

SO ORDERED.